[Cite as *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 2014-Ohio-1940.]

DUBLIN CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES; EAST BANK CONDOMINIUMS II, L.L.C., APPELLANT.

[Cite as *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 2014-Ohio-1940.]

*On reconsideration—Taxation—Valuation of real property—Board of Tax Appeals correctly rejected bulk-appraisal valuation for condominium units—Board of Tax Appeals acted unreasonably and unlawfully in reinstating county auditor's valuations—Cause remanded to Board of Tax Appeals for determination of value.*

(No. 2012-1432—Submitted January 7, 2014—Decided May 15, 2014.)

APPEAL from the Board of Tax Appeals, Nos. 2009-Q-1282 through 2009-Q-1301 and 2009-Q-1408.

ON MOTION FOR RECONSIDERATION.

_____

**FRENCH, J.**

**{¶ 1}** East Bank Condominiums II, L.L.C. ("East Bank"), appeals the decision of the Board of Tax Appeals ("BTA"), which reinstated the county auditor's valuations for 21 condominium units owned by East Bank. Originally, a majority of this court rejected the auditor's valuations and accepted the bulk-appraisal valuation East Bank submitted. *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, ___ N.E.3d ___ ("*Dublin City Schools I*"), ¶ 27. Today we grant, in part, the Dublin City Schools Board of Education's motion for reconsideration of our prior decision. We conclude that the BTA was correct in rejecting East Bank's bulk-appraisal valuation for the units, but was incorrect in adopting the auditor's valuations. Accordingly, we remand this matter to the BTA for an independent determination of value.

*Facts*

**{¶ 2}** This case concerns the valuation of 21 units in East Bank's 28-unit condominium complex. As of tax-lien date January 1, 2008, the 21 units were still under construction and unsold. The Franklin County Auditor valued each unit as a separate parcel. The aggregate value of the 21 units amounted to $8,139,300. The property-record cards do not indicate, however, whether the auditor properly took into account the unfinished state of the units when determining their values, as required by Ohio Adm.Code 5703-25-06(G).

**{¶ 3}** East Bank filed valuation complaints, challenging the auditor's assessments for each of the 21 units. The school board filed countercomplaints, seeking to retain the auditor's valuations.

**{¶ 4}** At the board of revision ("BOR") hearing, East Bank presented a report and testimony from appraiser Thomas Horner. After deducting the cost of finishing the units, Horner opined that the condominiums would yield "gross sale proceeds" of $6,492,294. Horner further determined that he had to value the units in bulk, because, in his view, all 21 condominiums were a "single economic unit." Accordingly, Horner discounted his figure to arrive at a "net present-value" of $3,100,000, which is less than 48 percent of the predicted gross sale proceeds. According to Horner, this number represented what a single investor would pay for all 21 condominiums. The BOR adopted Horner's $3,100,000 bulk valuation.

**{¶ 5}** The school board appealed to the BTA. The school board argued for adoption of the auditor's valuations, or, in the alternative, for adoption of Horner's "gross sale proceeds" value of $6,492,294. At the BTA hearing, the school board did not put on any witnesses or evidence. Instead, it focused solely on attacking the validity of Horner's appraisal.

**{¶ 6}** The BTA found that Horner's bulk-appraisal method was improper. *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA Nos. 2009-Q-1282 through 2009-Q-1301 and 2009-Q-1408, 2012 WL 3166815,

*5 (July 24, 2012). It subsequently ordered reinstatement of the auditor's valuations, which totaled $8,139,300 for the 21 units. *Id.* at *6.

**{¶ 7}** East Bank appealed the BTA's decision to this court. East Bank argued in part that the BTA erred by rejecting Horner's bulk-discount methodology and by not valuing the condominiums as a single economic unit.

**{¶ 8}** On October 16, 2013, this court issued its original decision in this matter, reversing the BTA. *Dublin City Schools I*, 139 Ohio St.3d 193, 2013-Ohio-4543, ___ N.E.3d ___. We held that the BTA erred in reverting to the auditor's determinations of value. *Id.* at ¶ 27. The majority opinion then concluded by "adopt[ing] the only evidence of valuation contained in the record presented by East Bank through its expert, resulting in a valuation of $3,100,000." *Id.* The majority opinion did not, however, consider whether the bulk-valuation approach, which was used by East Bank to arrive at the $3,100,000 figure, was appropriate. *Id.* at ¶ 27, fn. 1.

### Questions Presented

**{¶ 9}** The school board has moved for reconsideration. Under S.Ct.Prac.R. 18.02, we use our reconsideration authority to "correct decisions which, upon reflection, are deemed to have been made in error." *State ex rel. Huebner v. W. Jefferson Village Council*, 75 Ohio St.3d 381, 383, 662 N.E.2d 339 (1995). We will not, however, grant reconsideration when a movant seeks merely to reargue the case at hand. S.Ct.Prac.R. 18.02(B).

**{¶ 10}** The school board raises three grounds for reconsideration. First, it argues that this court erred in holding that the school board had to offer additional evidence of value in order to meet its burden of proof at the BTA hearing. This court already thoroughly considered the burden-of-proof issue in our first decision. *Dublin City Schools I* at ¶ 14-16. The issue was the subject of much discussion and debate in this court's competing opinions. *See id.* at ¶ 55-59. And all seven justices agreed, albeit for different reasons, that the school board needed

3

to offer additional proof to the BTA. *Id.* at ¶ 16, 58-59. Therefore, the school board's first argument does not call our attention either to an obvious error or an issue that this court did not consider. Accordingly, we decline to reconsider our opinion as to the school board's first claim.

**{¶ 11}** Second, the school board contends that this court erred factually in holding that the school board did not produce any evidence of its proposed value at the BTA hearing. Specifically, the school board claims that it produced evidence when it made an alternative argument to the BTA in support of Horner's $6,492,294 "gross sale proceeds" figure. In other words, it contends that East Bank's appraisal evidence was the school board's valuation evidence.

**{¶ 12}** We are not persuaded. Regardless of what the school board said to the BTA, the school board specifically argued *against* the $6,492,294 figure in its merit brief to this court. The school board supported only the auditor's valuations. The school board cannot argue against the validity of the $6,492,294 figure, and then claim that this court should have considered that figure as evidence of value. We therefore decline reconsideration as to the school board's second claim.

**{¶ 13}** Finally, the school board argues that the majority erred when it summarily accepted East Bank's $3,100,000 bulk-sale valuation without considering the validity of that valuation. The school board contends that we should have remanded this case to the BTA for an independent determination of value. We agree. Our prior decision erred when it adopted East Bank's bulk valuation without first conducting any analysis as to whether that valuation was accurate. This court can affirmatively accept a particular valuation only if it determines that the record supports that figure. *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, ¶ 15.

**{¶ 14}** Similarly, this court cannot reverse the BTA without first analyzing whether the BTA's decision was correct. R.C. 5717.04. Our appellate

power over the BTA is statutorily based. *Id*. We may reverse a decision of the BTA only upon determining "that such decision of the board is unreasonable or unlawful." *Id*. In this case, the BTA explicitly rejected East Bank's $3,100,000 valuation on the grounds that Horner's bulk-sale appraisal was legally improper. 2012 WL 3166815 at *5. A majority of this court reversed the BTA and adopted Horner's valuation. *Dublin City Schools I*, 139 Ohio St.3d 193, 2013-Ohio-4543, ___ N.E.3d ___, at ¶ 27. But the majority did so without first determining that the BTA acted unreasonably or unlawfully in rejecting the bulk-sale valuation. *Id*. The majority reasoned instead that it "need not consider whether the bulk sale approach was appropriate in this instance." *Id.* at ¶ 27, fn. 1. Both statute and precedent contradict this approach.

{¶ 15} Accordingly, we grant the school board's motion for reconsideration in part. We now consider whether the BTA erred in rejecting the bulk-sale valuation and whether remand would be appropriate.

### *Analysis*

#### A. *Horner's Bulk-Value Appraisal Was Inappropriate*

{¶ 16} Taxing authorities must value condominium units as separate parcels, even when those units are contained in a single complex. R.C. 5311.11 ("Each unit of a condominium property * * * is deemed a separate parcel for *all purposes of taxation and assessment* of real property.") (Emphasis added.) Horner's appraisal violates this legal mandate by valuing all 21 individual parcels in bulk as if they were "a single economic unit."

{¶ 17} In *Eastcreek Corp. v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga Nos. 53150-53156, 1988 WL 1544 (Jan. 7, 1988), the Eighth District Court of Appeals relied on R.C. 5311.11 in considering and invalidating a similar bulk appraisal. In *Eastcreek*, the appellee owned 30 units in a condominium complex. The owner presented evidence from an appraiser who applied "a forty percent discount to each unit because all of them were owned by one entity." *Id.*

at *1. "The rationale for this discount was that the condominiums could not be sold individually because of market conditions" and could only be sold in bulk. *Id.* The court found that this bulk-discounting method violated R.C. 5311.11. As the court explained:

> Under the plain language of [R.C. 5311.11], each condominium unit is "deemed to be a separate parcel for all purposes of taxation and assessment of real property." The board's use of a volume discount was based on the likelihood that all of the appellee's condominiums would be sold to one buyer. This method of valuation effectively treated the appellee's condominiums as if they all were one parcel. Consequently, the use of this method of valuation was in conflict with R.C. 5311.11, and was unlawful.

*Id.* at *2.

{¶ 18} Horner's appraisal fails for the same reasons. Just as in *Eastcreek*, Horner conducted a bulk valuation on the grounds that all of the condominiums were owned by one owner and "that owner [could] only sell all units at one time to one investor." Horner admittedly treated the condominiums as "a single economic unit." His methodology therefore runs afoul of R.C. 5311.11, as did the appraisal in *Eastcreek*.

{¶ 19} East Bank relies on this court's plurality decision in *Pingue v. Franklin Cty. Bd. of Revision*, 87 Ohio St.3d 62, 717 N.E.2d 293 (1999), to support the notion that a bulk-condominium appraisal is permissible. *Pingue*, however, is fundamentally distinguishable because it involved an actual sale of condominiums, not an appraisal. And our decision made no mention of R.C. 5311.11. *Pingue* does not, therefore, support East Bank's position.

{¶ 20} *Pingue* dealt with the valuation of 44 identical condominium units. *Id.* at 62. The property owner had purchased all 44 units for $2,530,000, or $57,500 per unit. *Id.* He presented uncontroverted evidence that the purchase was an arms-length transaction and argued that the sale price of $57,500 per unit should establish the taxable value for each parcel. *Id.* at 63. The BTA rejected the sale price and instead looked to appraisal evidence to determine the value of each parcel. *Id.* This court reversed the BTA. We held that under former R.C. 5713.03, we were required to use the allocated sale price to establish the true taxable value of the properties. *Id.* at 64-65.

{¶ 21} *Pingue* does not support the notion that the BTA can accept bulk-appraisal evidence when determining the taxable value of condominium units. *Pingue* merely supports the notion that the law favors the use of a sale price over competing appraisal evidence. In this case, there is no actual sale price to consider. East Bank presented only an appraisal, and that appraisal violated R.C. 5311.11. *Pingue* is therefore inapposite.

{¶ 22} In addition to being legally impermissible, East Bank's appraisal was also inconsistent with the record. As we previously noted, Horner testified that the condominiums constituted a single economic unit because East Bank owned all the units and could only sell them in bulk to a single investor. He further implied that the highest and best use of the condominiums was as a single investment property, rather than individual, owner-occupied residences.

{¶ 23} The record contradicts Horner's conclusions. First, despite his testimony, Horner's own appraisal report lists the highest and best use of the properties as "[o]wner-occupied residential condominiums." East Bank partner George Babyak also confirmed that East Bank planned the condominium development for individual residential use. Babyak further testified that although a few out-of-state developers informally approached East Bank about purchasing all 21 units, East Bank rejected these bulk-purchase offers, preferring to market

and sell the condominiums individually.  By late 2011, East Bank had sold 14 of the 21 units.  No bulk sale ever occurred.

{¶ 24} Horner's appraisal method, which "results in a bulk purchase value and represents what the owner would sell all of the units [for] to a single purchaser," is inconsistent with these facts.  The highest and best use of the condominiums was as owner-occupied residential units.  East Bank continuously marketed and sold the condominiums individually.  At no point did East Bank ever list the 21 units as a bulk-sale investment property.  It was therefore inappropriate for Horner to value the condominiums in bulk as if East Bank could sell them only to a single investor.  The facts do not support the appraisal's "single economic unit" premise.

{¶ 25} Finally, East Bank's appraisal is also invalid because it does not comport with the statutory purposes of real-property taxation.  County auditors are charged with assessing the "true value" of real property.  R.C. 5713.01(B).  "True value" means either the amount the property recently sold for on the open market or the amount of an appraisal predicting what that sale price would be.  Ohio Adm.Code 5703-25-05(A); *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 23; *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964).

{¶ 26} East Bank's appraisal does not assess the "true value" of the condominium parcels for taxation purposes.  Instead of predicting what the units would sell for on the open market, the appraisal predicted the units' "net present" investment value.  It began by valuing the condominiums "in their present condition on a retail basis if sold to individuals."  It then deducted "sales costs" such as commissions, legal fees, holding costs, and property taxes.  Next, it applied a 20 percent time-value-of-money discount to account for the absorption rate of the condominiums.  The appraisal's final figure—$3,100,000—represents

8

"a 48% discount from the retail price or total anticipated sales income." Essentially, East Bank's appraisal predicted actual sale prices and then discounted those sale prices to arrive at a cash-in-hand valuation.

{¶ 27} The BTA was therefore correct in rejecting East Bank's appraisal on the grounds that it "arrives at an investment value, rather than real market value." *Dublin City Schools Bd. of Edn.*, 2012 WL 3166815, at *4, citing *M/I Homes of Cincinnati, L.L.C. v. Warren Cty. Bd. of Revision*, BTA No. 2009-V-3796, 2010 WL 3724159 (Sept. 21, 2010). As the BTA pointed out, this methodology may have been appropriate for a financial institution making lending decisions, but it was not an appropriate way to appraise real property for taxation purposes. 2012 WL 3166815 at *5 ("while it may be true that, for purposes of appraising properties for financing purposes, it is appropriate to apply a bulk discount, the present matter concerns appraisal for tax valuation purposes"). The appraisal openly deviated from finding the true values, or anticipated sale prices, of the condominiums. Rather, East Bank proffered an investment value that was significantly less than the predicted sale prices of the units. We cannot sanction this approach; the law mandates that we use the predicted sale prices themselves as the true taxable value of the properties. *Cummins* at ¶ 23; Ohio Adm.Code 5703-25-05(A).

{¶ 28} Finally, we acknowledge Horner's testimony that the appraisal's methodology comported with professional FIRREA[1] and USPAP[2] guidelines. Those guidelines, however, are ultimately irrelevant in this context. Industry standards do not establish the legal parameters of real-property assessment for taxation purposes. *See, e.g.*, *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637, ¶ 23.

---

1. Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

2. Uniform Standards of Professional Appraisal Practice.

{¶ 29} For all these reasons, the BTA did not err in rejecting East Bank's bulk-value-appraisal methodology in this case. The methodology contradicted R.C. 5311.11, the facts of this case, and the statutory goals of real-property assessment.

### B. Rather Than Revert to the Auditor's Valuations, the BTA Should Have Independently Determined the Value of the Properties

{¶ 30} After it considered and rejected East Bank's arguments, the BTA reinstated the auditor's valuations for each parcel. *Dublin City Schools Bd. of Edn.*, 2012 WL 3166815, at \*6. In this court's prior opinion, we held that the BTA erred in reverting to the auditor's valuations. *Dublin City Schools I*, 139 Ohio St.3d 193, 2013-Ohio-4543, ___ N.E.3d ___, at ¶ 26. That portion of our prior decision remains unchanged.

{¶ 31} Rather than adopt the auditor's valuations, the BTA should have conducted its own analysis and made an independent determination as to the taxable values of the properties. *See, e.g.*, *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 26 ("When there is sufficient evidence to permit the BTA to perform an independent valuation * * * the BTA must do so"); *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 23-25. If necessary, the BTA may order the presentation of additional evidence to assist with this determination. R.C. 5717.01; *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 567, 740 N.E.2d 276 (2001) (remanding to the BTA for an independent determination of value and noting that under R.C. 5717.01, the BTA " 'may order the hearing of additional evidence, and may make such investigation concerning the appeal as it deems proper' "). Accordingly, we remand this case to the BTA so that it may conduct an independent valuation for the properties in question. *See Colonial Village* at ¶ 1 (ordering remand for the BTA to conduct an

independent valuation of the property after the BTA had unlawfully upheld the auditor's valuation); *Vandalia-Butler* at ¶ 27 (remanding because the BTA did not conduct an independent analysis of value).

### *Conclusion*

{¶ 32} Upon partial reconsideration of our prior decision, we find that the BTA correctly rejected East Bank's bulk-value appraisal for the 21 condominium units and we therefore affirm that portion of the BTA's decision. East Bank's appraisal violated real-property-assessment statutes and was otherwise unsupported by the facts in the record. The BTA erred, however, in reverting to the auditor's determinations of value. The BTA should have independently determined the taxable values of the 21 properties in question. We remand this case to the BTA so that it may perform that independent valuation.

Motion for reconsideration granted in part,

decision affirmed in part

and reversed in part,

and cause remanded.

O'CONNOR, C.J., and LANZINGER and O'NEILL, JJ., concur.

PFEIFER, O'DONNELL, and KENNEDY, JJ., dissent in part.

_____

**O'DONNELL, J., dissenting in part.**

{¶ 33} I respectfully dissent from the majority's decision to reconsider whether the Board of Tax Appeals ("BTA") erred in rejecting the bulk sale valuation and to remand the matter to the BTA for an independent determination of value. Here, East Bank presented expert evidence of a $3,100,000 valuation, and the Dublin City Schools Board of Education failed to present any evidence supporting a different valuation and thus failed to meet its burden of proof on appeal to the BTA. Moreover, because evidence in the record negated the auditor's valuation of the property, the BTA acted unreasonably and unlawfully

by reverting to that valuation instead of conducting its own independent valuation based upon the evidence in the record. Accordingly, I would adopt East Bank's evidence and establish the 2008 valuation as $3,100,000.

*Factual Background*

**{¶ 34}** This case involves the property valuation of 21 condominium units that remained unfinished to varying degrees as of the 2008 tax lien date. The Franklin County auditor assessed the true value of each of the 21 units and determined that the aggregate value of the units for the tax year 2008 was $8,139,300. East Bank filed complaints with the board of revision challenging the auditor's valuation of the property, and the board of education filed countercomplaints seeking retention of the auditor's valuation.

**{¶ 35}** At the board of revision hearing, the only evidence regarding valuation came from East Bank. In addition to the testimony of East Bank's managing partner, East Bank presented the testimony and appraisal report of Thomas Horner, who opined that the 21 units had a "net present market value" or "as-is value" of $3,100,000. To arrive at this value, Horner conducted a comparable sales analysis and then deducted the estimated cost to finish the remaining units. This analysis yielded "gross sale proceeds" of $6,492,294. Because he considered the 21 units as a "single economic unit" due to the facts that they are "owned by one owner" and "[t]hat owner can only sell all units at one time to one investor," he applied a "bulk discount" to arrive at an estimated value of $3,100,000.

**{¶ 36}** Although counsel for the school board cross-examined East Bank's managing partner, the school board did not present any witnesses or additional evidence regarding the value of the property at the board of revision hearing.

**{¶ 37}** The board of revision adopted Horner's valuation of $3,100,000 as the total fair market value for the 21 units, noting, "We were given no additional information on behalf of the county complainant school board in this matter, and

* * * we recognize Mr. Horner as being an expert in the area of real estate appraisal."

{¶ 38} The school board appealed the board of revision's decision to the BTA. At the BTA hearing, however, the school board failed to present any witnesses or any evidence supporting its valuation or the auditor's valuation. East Bank presented the testimony of its managing partner and Horner, who offered additional data from condominium sales occurring after the tax lien date and retrospectively concluded that a revised cash flow analysis yielded a value of $2,900,000.

{¶ 39} After its review, the BTA reversed the board of revision's adjustments and reinstated the auditor's valuation of the 21 units, determining that Horner's use of the bulk discount was improper and concluding that East Bank "failed to present competent and probative evidence to either this board or the BOR in support of its requested decreases in value." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA Nos. 2009-Q-1282 through 2009-Q-1301 and 2009-Q-1408, 2012 WL 3166815, *6 (July 24, 2012).

### *Dublin City Schools I*

{¶ 40} In our prior decision, we recognized that "[w]hen a party appeals a board of revision's decision to the BTA, the appellant, whether it be a taxpayer or a board of education, has the burden to prove its right to a reduction or increase in the board of revision's determination of value." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, ___ N.E.3d ___, ¶ 15 ("*Dublin City Schools I*"), citing *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision,* 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001). We further explained that when the board of revision adopted East Bank's valuation, the burden of presenting "competent and probative evidence" supporting a different valuation shifted to the board of education on appeal to the BTA. *Id.* at ¶ 16. However, we determined that the board of education failed to

meet its burden in this case, because it did not present any evidence to support its own valuation or the auditor's valuation. *Id.*

{¶ 41} Moreover, we determined that "the BTA's reinstatement of the auditor's valuation was 'not justified, because the taxpayer had presented evidence contrary to the auditor's determination to the board of revision.' " *Id.* at ¶ 21, quoting *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, ¶ 12. Specifically, we noted that "there is no evidence indicating that the auditor accounted for the unfinished state of the units or the units' depreciation in value due to market conditions, and the historical sales evidence provided by East Bank further contradicts the auditor's valuation." *Id.* Thus, we concluded that "[w]hen confronted with such clear evidence negating the auditor's valuation, the BTA acted unreasonably and unlawfully in adopting the auditor's valuation rather than determining the taxable value of the property." *Id.* at ¶ 26.

{¶ 42} Determining that the school board did not present any evidence before the board of revision or the BTA, that the evidence in the record negated the auditor's valuation, and that the BTA acted unreasonably and unlawfully in failing to conduct its own independent valuation despite sufficient evidence in the record to do so, we reversed the decision of the BTA and established the 2008 valuation as $3,100,000 in accordance with the only evidence of valuation contained in the record as presented by East Bank's expert. *Id.* at ¶ 27. We further explained, "We need not consider whether the bulk sale approach was appropriate in this instance because we determine that the BTA acted unreasonably and unlawfully in not conducting its own independent valuation of the property taking into account the unfinished state of some, if not all, of the units, the depreciation in value, and the sales history." *Id.* at fn. 1.

*Reconsideration*

**{¶ 43}** Instead of determining whether the BTA erred in rejecting the bulk sale valuation and remanding the cause, I would reinstate the valuation of $3,100,000 based upon East Bank's evidence of value and the board of education's failure to present any evidence supporting a different valuation.

**{¶ 44}** In *Bedford*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, a case involving the valuation of an improved parcel of land that was one of several parcels in a strip mall, *id.* at ¶ 1, we concluded that the BTA's reinstatement of the auditor's valuation was not justified, because the property owner presented evidence contradicting the auditor's determination to the board of revision and the school board's evidence before the BTA "did not amount to independent evidence of value that would undermine the BOR's determination" nor did it "support reinstating the auditor's valuation." *Id.* at ¶ 12-13. We further explained that we did "not need to remand the cause to the BTA, because the BOR's determination comports with the evidence in the record." *Id.* at ¶ 15.

**{¶ 45}** Similarly, in my view, we do not need to remand this matter to the BTA, because East Bank provided expert evidence supporting the value of $3,100,000 and the school board had the opportunity—and the burden—to present evidence supporting a different valuation on appeal to the BTA but failed to do so. Considering that the parties had "ample opportunity to present evidence," they should not be given another chance to present additional evidence on remand. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 34 (vacating the BTA's decision and remanding for a determination whether the sale was "recent" in light of the entire record but ordering that "the BTA shall not take additional evidence on remand," as "the parties have had ample opportunity to present evidence"); *see generally HealthSouth Corp. v. Levin*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 36 (vacating the BTA's decision and remanding the case to the

BTA for it to "complete its fact-finding" but ordering that "[b]ecause the parties have been afforded ample opportunity to present evidence, the BTA shall not take additional evidence on remand").

{¶ 46} Moreover, the BTA acted unreasonably and unlawfully in reinstating the auditor's valuation, because the evidence in the record contradicted that valuation and there was sufficient evidence in the record from which the BTA could independently determine value. *Dublin City Schools I*, 139 Ohio St.3d 193, 2013-Ohio-4543, ___ N.E.2d ___, at ¶ 21, 26. The BTA should have conducted an independent determination of value based on the evidence in the record in the first instance, and for that reason I dissent from the majority's decision to "remand this case to the BTA so that it may conduct an independent valuation for the properties in question." Majority opinion at ¶ 31. A remand in this situation prolongs even further the determination of value in a case involving a 2008 tax lien date.

{¶ 47} Accordingly, I would reverse the determination of the BTA and, in light of the school board's failure to satisfy its burden and provide evidence supporting a different valuation, I would establish the 2008 valuation at $3,100,000 in accordance with the evidence presented in this case.

PFEIFER and KENNEDY, JJ., concur in the foregoing opinion.

_____

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, Jeffrey A. Rich, and Karol C. Fox, for appellee Dublin City Schools Board of Education.

Zeiger, Tigges & Little, L.L.P., Marion H. Little Jr., and Matthew S. Zeiger, for appellant.

_____