[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Copley-Fairlawn City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-1485.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-1485

COPLEY-FAIRLAWN CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE, *v.* SUMMIT COUNTY BOARD OF REVISION ET AL., APPELLEES; TEAM RENTALS, L.L.C., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Copley-Fairlawn City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-1485.]

*Taxation—Real-property valuation—Auditor's valuation may not serve as default valuation when owner's evidence before board of revision negates that value—When the evidence negates auditor's valuation, Board of Tax Appeals must determine a new value if record permits it to do so—Board of Tax Appeals' decision reversed and cause remanded.*

(No. 2014-0955—Submitted October 13, 2015—Decided April 12, 2016.)

APPEAL from the Board of Tax Appeals, No. 2013-4317.

_____

**Per Curiam.**

{¶ 1} This real-property-valuation case concerns the proper valuation for tax year 2012 of a two-story office building in Summit County. Team Rentals, L.L.C., the property owner, filed a complaint seeking a reduction of the value assigned to its property, and the Summit County Board of Revision ("BOR") reduced the value from $1,362,930 to $1,125,000 based explicitly on a bank appraisal presented by Team Rentals at the BOR hearing. The Copley-Fairlawn City School District Board of Education ("BOE") then appealed to the Board of Tax Appeals ("BTA"), and that board reversed the BOR's valuation and reinstated the higher valuation determined by the auditor. Team Rentals has appealed to this court.

{¶ 2} The BTA's decision relies on the bank appraisal being unsupported by appraiser testimony and the fact that the appraisal's opinion of value was expressed as of June 14, 2011, rather than as of the tax-lien date, January 1, 2012. BTA No. 2013-4317, 2014 Ohio Tax LEXIS 2958 (May 9, 2014), 3. Finding that the record lacked competent and probative evidence of value, the BTA reverted to the value originally assessed by the county auditor.

{¶ 3} In taking that action, however, the BTA misapprehended the competency of the evidence and ignored the case law that bars the use of the auditor's original valuation as a "default value" under the circumstances presented here. We therefore reverse the decision of the BTA, and we remand for an independent determination of value based upon all the evidence in the record.

## BACKGROUND

{¶ 4} The two-story multitenant office building at issue in this case consists of three parcels; the property was acquired in 2002 for $1,400,000. Theodore Klimczak purchased the property and later transferred ownership to Team Rentals, L.L.C., while continuing to act as the company's managing member.

**{¶ 5}** For tax year 2012, the Summit County fiscal officer assigned a total value of $1,362,930 to the three parcels comprising the property. Klimczak, as managing member of Team Rentals, filed a complaint with the Summit County BOR, asserting that a decrease in valuation to $1,125,000 was justified in light of a "2012 professional appraisal and economic conditions." Team Rentals attached documents to the complaint, including (1) Klimczak's 2011 correspondence with Huntington Bank about refinancing the property, (2) Huntington's request that an appraisal be completed for use in "financing and internal collateral and risk analysis, and/or possible use in foreclosure," and (3) a copy of the appraisal report prepared for the bank. The BOE filed a counter-complaint seeking retention of the auditor's valuation.

**{¶ 6}** The BOR held a hearing on August 12, 2013. Klimczak testified on behalf of the property owner. He explained that the owner had lost money on the property every year since 2002, with the exception of 2012. As proof, Klimczak submitted 2011 and 2012 income-tax records.

**{¶ 7}** Klimczak also indicated that Team Rentals significantly lowered rental rates for lessees (from roughly $16 per square foot in 2002 to $10 per square foot). He stated that vacancies are still hard to fill, especially because nearby office rentals are available at a lower rate. According to Klimczak, the vacant space (approximately 20 percent of the building) had been listed for four years. Klimczak's business occupied several suites in the building and subsidized the property's losses by paying a higher rental rate for those suites. But the owner still did not have enough money to complete needed repairs, such as a new roof.

**{¶ 8}** In light of these financial difficulties, Klimczak refinanced the property with Huntington Bank in 2011. While the refinancing was being negotiated, Brent T. Kuwatch was hired to appraise the property. A copy of Kuwatch's appraisal report was introduced by Team Rentals at the BOR hearing, but Kuwatch did not testify.

**{¶ 9}** In the report, Kuwatch considered each of the three standard approaches to valuation. He concluded that "the cost approach [was] not applicable due to the age of the improvements." Under the sales-comparison approach, he considered four sales (two outside Summit County) and arrived at a value of $1,165,000. Finally, under the income approach, Kuwatch examined rental data from other area buildings and arrived at a value of $1,075,000. Ultimately, he opined a value of $1,125,000 as of June 14, 2011—a date six months before the 2012 tax-lien date at issue in the case. The appraisal report also contained disclaimers: Kuwatch cautioned that "[t]he depth of discussions contained in this report is specific to the needs of the client for the intended use," and he clearly stated that "[t]he intended use of this report is to assist Huntington Bank in making internal decisions regarding financing," emphasizing that the appraisal was "prepared for the exclusive benefit of said entity" and stating that it "may not be used or relied upon by any other party."

**{¶ 10}** The BOE did not present any evidence at the BOR hearing. Instead, the BOE's counsel relied on cross-examining Klimczak and observing that the appraiser was not present for cross-examination.

**{¶ 11}** The record contains the deliberation of the BOR, in which the appraisal value of $1,125,000 was adopted for the three parcels. On August 20, 2013, the BOR issued decisions retaining the auditor's valuation for two of the parcels, but it decreased the value of parcel No. 09-1267 from $1,271,970 to $1,034,030, a reduction of $237,940. Thus, the BOR reduced the combined valuation of the three parcels from a total of $1,362,930 to $1,125,000.

**{¶ 12}** The BOE appealed to the BTA, asking for reinstatement of the auditor's valuation for parcel No. 09-1267. The BOE did not file any further pleadings or conduct discovery. At the BTA hearing on March 11, 2014, the BOE waived its right to appear, but Team Rentals was represented by an attorney, Thomas Skidmore. Skidmore noted that the BOE had not submitted any new

evidence or presented any witness testimony to the BTA. He then directed the BTA to the statutory transcript from the BOR proceedings and asked the BTA to uphold the BOR's decision.

{¶ 13} On May 9, 2014, the BTA issued a decision reversing the BOR and reinstating the auditor's initial valuation. 2014 Ohio Tax Lexis 2958, at 5-6. The BTA held that the BOR's determination to reduce the value was "unsupported by competent and probative evidence." *Id.* at 4. The BTA explained that the BOR had erred by relying on an appraisal that (1) was not authenticated at the hearing by its author, (2) had been prepared for refinancing purposes (rather than tax-assessment purposes), and (3) opined a value for six months prior to the tax-lien date. *Id.* at 3. The BTA also commented more broadly on the evidence in a footnote, sweepingly characterizing it as the type that led to mere speculation on the part of the finder of fact. *Id*. at 3, fn. 3. In effect, the BTA treated all the evidence presented at the BOR hearing as incompetent to support a determination of value.

{¶ 14} Team Rentals has appealed.

### THE AUDITOR'S VALUATION MAY NOT SERVE AS A DEFAULT VALUATION WHEN THE OWNER'S EVIDENCE BEFORE THE BOR NEGATES THAT VALUE

{¶ 15} In this case, the BTA impugned all the evidence in the record and reverted to the auditor's determination of value. Given the record before it and the determination of the BOR, this constituted error, and we therefore reverse the BTA's decision to revert to the auditor's determination.

{¶ 16} The BTA's error has two components: (1) a sweeping rejection of the competency of the evidence to demonstrate the value of the property and (2) the failure to recognize that the evidence before the BOR negated the validity of the auditor's valuation, thereby making it improper to revert to the auditor's valuation. We consider these components in reverse order.

*When the evidence negates the auditor's valuation, the BTA must determine a new value if the record permits it to do so*

{¶ 17} Our case law has identified a category of cases in which "the evidence presented to the board of revision or the BTA contradicts the auditor's determination in whole or in part"; in such cases, "when no evidence has been adduced to support the auditor's valuation, the BTA may not simply revert to the auditor's determination." *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 27. We have characterized this situation as a "narrow exception," *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 24, to the usual rule that the BTA is justified in retaining the county's valuation of the property when an appellant "fails to sustain its burden of proof at the BTA," *id*. at ¶ 23. The exception "trigger[s] the legal duty of the BTA to determine whether the record as developed by the parties contain[s] sufficient evidence to permit an independent valuation of the property"; if it does, then the BTA must "perform such a valuation." *Id*. at ¶ 25.

{¶ 18} Recently, we construed these earlier cases to hold that "[w]hen confronted with * * * clear evidence negating the auditor's valuation," the BTA "act[s] unreasonably and unlawfully in adopting the auditor's valuation rather than determining the taxable value of the property." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, 11 N.E.3d 206, ¶ 26 ("*Dublin City Schools I*"). This conclusion was affirmed on reconsideration. 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 30 ("*Dublin City Schools II*").

{¶ 19} This line of authority closely relates to what we have referred to as "the *Bedford* rule," based on *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913. Pursuant to that rule, "when the board of revision has reduced the value of the property based on

the owner's evidence, that value has been held to eclipse the auditor's original valuation," and the board of education as appellant before the BTA may not rely on the auditor's valuation as a default valuation. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 35. Instead, "the BOR's adopting a new value based on" the owner's evidence has the effect of " 'shift[ing] the burden of going forward with evidence to the board of education on appeal to the BTA.' " *Worthington City Schools* at ¶ 35, 41, quoting *Dublin City Schools I.*

*Team Rentals' evidence both negated the validity of the auditor's valuation and furnished a basis for valuing the property*

{¶ 20} Contrary to the BTA's sweeping rejection of the evidence presented, Team Rentals did succeed in negating the auditor's determination.

{¶ 21} Turning first to the appraisal, we note the accuracy of the BTA's initial observations, all of which are significant in determining whether and in what manner the appraisal can be used: the written report was presented without authenticating and supporting testimony from the appraiser, the appraisal was expressly performed for bank-financing purposes, and the "as of" date was six months before the lien date. It is also true that the straightforward reliance on the opinion of value concluded by the appraisal report was unlawful under these circumstances. *See Freshwater v. Belmont Cty. Bd. of Revision*, 80 Ohio St.3d 26, 30, 684 N.E.2d 304 (1997) (because "[t]he essence of an assessment is that it fixes the value based upon facts as they exist at a certain point in time," the BTA properly rejected an opinion of value based upon averaging an appraisal of the property before the lien date and another appraisal of the property after the lien date); *accord AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 13 ("To rely on the appraisal report [determining value as of January 1, 2003] as expert opinion of value for the 2002 tax year would constitute error").

{¶ 22} But the attempt to use the opinion of value expressed in the appraisal report as an opinion of value for a different date does not render the appraisal incompetent as evidence for any purpose at all. Indeed, in *AP Hotels*, we acknowledged the propriety of the BTA's using the specific components of the appraisal for the later tax year in determining the value for the current year. *AP Hotels*, ¶ 14-17. And it became obligatory on the BTA to adopt that approach, given that reverting to the auditor's valuation would not have been proper. *Id.* at ¶ 18.

{¶ 23} Moreover, in *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, we specifically determined that there was no plain error in the BTA's consideration of a written bank appraisal despite the absence of testimony by its preparer, based upon "indicia of reliability" in the testimony concerning the appraisal, *id.* at ¶ 21. The fact that the report was commissioned and used by the bank for its business purposes, along with the signed certification by the certified appraiser, furnished a sufficient evidentiary basis for consideration of the report against a claim of plain error.

{¶ 24} The circumstances of this case parallel those in *Plain Local Schools* in several important respects. The appraisal in this case was offered along with testimony as to its origin and use; specifically, Klimczak testified that the appraisal was commissioned by the bank he consulted in connection with refinancing the property in 2011. Klimczak needed a lower interest rate because, as an anchor tenant, his business was subsidizing the other tenants, given the decline in rents (rents in the area had declined from $16 to $10 since the acquisition of the building). The bank's analysis and the appraisal came to the conclusion that the value of the property had decreased to $1,125,000. That conclusion constricted the amount of equity against which Klimczak could borrow, to the point that he had to raid a retirement account to obtain sufficient

8

funds for the refinancing. The building also would need a new roof and other repairs, and equity to pay those expenses would be lacking at a later date.

{¶ 25} The uncontroverted testimony thereby shows the preparation of the appraisal for a business purpose as well as its actual use for that purpose; it also demonstrates the reliance placed by both Klimczak and the bank on the appraisal's valuation of the property. Moreover, as in *Plain Local Schools*, the appraisal report is certified by a state-certified appraiser and member of the Appraisal Institute and his licensed, state-registered appraiser assistant. Finally, the analysis of sale and rent comparables in the appraisal report is usable for purposes of determining the property's 2012 valuation, just as the data from the 2003 appraisal in *AP Hotels* was available for use in valuing the property for tax year 2002. *AP Hotels*, at ¶ 16-17. Similarly, the May 1, 2004 appraisal information in *Plain Local Schools* could reasonably have been used in valuing the property as of January 1, 2005. *Plain Local Schools* at ¶ 28-30.

{¶ 26} In its brief, the BOE argues that it "lodged a timely objection to the reliability of the report." A review of the audio recording of the hearing reveals that the BOE's counsel did point out the absence of the appraiser and stated that she would have asked him whether the value would be the same as of the lien date and whether the value would be the same for real-estate-valuation purposes. Counsel also pointed to the statement that the "leased fee" was the subject of the appraisal rather than the "fee simple"; she had "questions with respect to that" as well. [1]

---

[1] Although examination of the appraiser regarding his reference to valuing the "leased fee" might have been helpful, the mere use of that term does not impugn the competence of the appraisal data. Our case law makes clear that the distinction drawn in the appraisal industry between "fee simple" and "leased fee" does not reflect a distinction made in Ohio law; the "fee simple" to be valued for purposes of Ohio law is the same whether or not that interest is encumbered by a lease. *See Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, ¶ 23, fn. 4.

{¶ 27} Counsel's statements with regard to these points do not amount to a formal objection against the use of the appraisal or its information. But ultimately, whether our review adheres to the plain-error standard, or whether we conduct a more searching analysis as to the admissibility of the evidence, we conclude that under the case law, the appraisal furnished evidence that in conjunction with the testimony was competent; that negated the validity of the auditor's valuation; and that furnished an independent basis for valuing the property.

{¶ 28} The same is true with the testimonial and documentary evidence more generally. The BTA listed four types of evidence that it finds to be not useful. 2014 Ohio Tax LEXIS 2958 at 3, fn. 3. One category is the type of appraisal, that is, one given for purposes other than tax valuation, which we have already addressed; as for the other three enumerated types, none is present here. Instead, the evidence consists of a bank appraisal with accompanying lay testimony along with other documents that offer specific evidence potentially useful in valuing the property. We therefore hold that the BTA's blanket characterization of the evidence as not competent is erroneous.

{¶ 29} In light of the foregoing discussion, we hold that the present case falls into the exception identified by *Colonial Village* in that the evidence presented by the owner at the BOR both negates the validity of the auditor's valuation while also furnishing a basis for an independent determination of value by the BTA.

### A LEGAL ERROR IN THE BOR'S DETERMINATION PREVENTS AFFIRMANCE OF THE BOR'S DETERMINATION

{¶ 30} Although the BTA erred in reverting to the auditor's valuation, it correctly perceived that the BOR's determination could not be simply affirmed and adopted. That is so because the BOR deliberation relies exclusively on the appraisal opinion of value, without any qualification such as was present in *AP*

*Hotels*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, and *Plain Local Schools*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268.  Although the ultimate determination of value might turn out to be correct, the BOR's straightforward reliance on the expressed opinion of value set forth in the appraisal is wrong in that it violates *Freshwater*, 80 Ohio St.3d at 30, 684 N.E.2d 304.

{¶ 31} Under these circumstances, we cannot simply reverse by invoking the *Bedford* rule and reinstate the reduced value ordered by the BOR.  The presence of plain error in the BOR's deliberation requires that, pursuant to the doctrine of the *Dublin City Schools II*, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 32, we reverse *and remand* for an independent determination of value by the BTA based on all the evidence set forth in the record.  We also follow the *Dublin City Schools* doctrine by instructing that on remand, the BTA may in the exercise of its discretionary authority hear additional evidence in order to arrive at a proper valuation of the property for tax year 2012.  *Id.*, ¶ 31.

### CONCLUSION

{¶ 32} For the foregoing reasons, we reverse the decision of the BTA and remand with instructions that the BTA perform an independent valuation of the property.

Decision reversed<br>and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

_____

Britton, Smith, Peters & Kalail Co., L.P.A., and Karrie M. Kalail, for appellee Copley-Fairlawn City School District Board of Education.

Thomas A. Skidmore, for appellant.

_____