[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-8332.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8332

OLENTANGY LOCAL SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.*

DELAWARE COUNTY BOARD OF REVISION ET AL., APPELLEES; THE KENNEY

COMPANY, L.L.C., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-8332.]

*Taxation—Real-property-valuation—Board of Revision's reliance on appraisal that valued multiple condominium parcels as a single economic unit was improper—Evidence in record before Board of Tax Appeals supported auditor's valuation—Bedford rule satisfied—Board of Tax Appeals' reinstatement of auditor's valuation affirmed.*

(No. 2014-0552—Submitted August 16, 2016—Decided December 27, 2016.)

APPEAL from the Board of Tax Appeals, No. 2011-A-565.

_____

**Per Curiam.**

**{¶ 1}** This real-property-valuation case concerns the proper valuation for tax year 2009 of the 14 unsold units of a 16-unit office condominium development.  At the Delaware County Board of Revision ("BOR"), The Kenney Co., L.L.C., which is the property owner and the appellant here, presented an appraisal that assigned an aggregate value of $1,430,000 to the units, a reduction from the approximately $2,512,000 value determined by the auditor.  The BOR adopted the appraisal valuation, and the Olentangy Local Schools Board of Education ("BOE"), an appellee here, appealed to the BTA, which reversed the BOR's decision and reinstated the auditor's valuation, BTA No. 2011-A-565, 2014 Ohio Tax LEXIS 1591, 11 (Mar. 10, 2014).  On appeal to this court, the property owner advocates the propriety of the BOR's having relied on the owner's appraisal.  We disagree, and we affirm the decision of the BTA.

## Factual Background

**{¶ 2}** The Kenney Co. contested the auditor's valuation of 14 office condominium parcels for tax year 2009; for its part, the BOE filed a countercomplaint seeking retention of the auditor's valuation.  The 14 units were part of a 16-unit complex in which two units had sold as condominiums as of the tax-lien date.  The auditor valued each of the 14 parcels individually; those values totaled about $2,512,000.  The 14 units have a combined total of 22,070 square feet, making the auditor's market value compute to approximately $114 per square foot.

*Sale prices of the individual condominiums*

**{¶ 3}** Before the tax-lien date, January 1, 2009, two of the condo parcels sold.  In 2006, a 1,552-square-foot unit sold for $215,000, amounting to $138.53 per square foot.  In 2007, a 1,564-square-foot unit sold for 215,649, amounting to $137.88 per square foot.  And after the lien date, in June 2010, a sale occurred for $108 per square foot.

*The property owner's appraisal evidence*

**{¶ 4}** At the BOR hearing, the owner offered an appraisal report prepared by Charles Porter, MAI, along with the appraiser's testimony. Porter noted the sale history but did not utilize the sales as evidence of value. His highest-and-best-use analysis states that "[t]he subject property includes fourteen condominium office units in two eight-unit buildings," and as of the tax-lien date of January 1, 2009, "all fourteen units were un-demised, unfinished shell space." He noted that the units were constructed in 2006 "for sale or lease," and that only three of the units had sold as of the appraisal preparation. Noting that the current "absorption rate" indicated a marketing period of more than ten years, Porter opined that "[t]he prudent investor would likely rent the subject units in an attempt to cover operating expenses until such time [as] the market improves"; accordingly, despite the "certain amount of owner-occupant appeal, the highest and best use of the subject property at this time is considered to be a multi-tenant office property for rent."

**{¶ 5}** Porter testified in support of this opinion at the BOR hearing, stating that the slow sales demonstrated the poor market and would lead a "prudent investor" to hold the building as a rental complex: the "highest and best use is to rent the units until they sell." Both the written report and the testimony place weight on the sales experience of Clairedan Condominium Offices, a 6600-square-foot complex that had been on the market for three years with no activity.

**{¶ 6}** Porter opined an aggregate value of $1,430,000, based on valuing the parcels as a single, multi-tenant rental complex. Given that the total amount of square footage at issue was 22,070, Porter's value-per-square-foot is $64.80 per square foot, as opposed to the auditor's valuation, which amounted to $114 per square foot.

*Other evidence at the BOR*

**{¶ 7}** The Kenney Co. also offered the testimony of one of its principals, Rowland Giller. Giller testified to the difficulty of marketing the condos, noting that the construction costs had been $115 per square foot and were not recoverable in the market.

**{¶ 8}** Deputy Auditor Michael Schuh submitted two reports to the BOR, one before the October 6, 2010 BOR hearing and another addressing the appraisal report that had been presented at the hearing. The first report, dated June 6, 2010, discussed using construction costs and recommended a value in the range of $77 to $80 per square foot because of the units' unfinished status. The other report, dated October 29, 2010, opined that the appraisal value per square foot of $64.80 was "very low and not supported." Neither report was made available to the parties before the BOR hearing.

*The BOR decision and the BTA appeal*

**{¶ 9}** Meeting on February 8, 2011, the BOR adopted the owner's appraisal value. The BOE appealed to the BTA, where, at the hearing, it presented conveyance-fee statements and deeds for the three condo parcels that had sold. No other evidence was presented at the BTA.

**{¶ 10}** Based on that evidence (particularly the 2010 sale), the BTA found that the sale of condo units "for amounts approximately twice that to which the appraisers opined, belie the conclusions set forth in the appraisal." 2014 Ohio Tax LEXIS 1591, 10. Additionally, the BTA invoked case law rejecting an economic-unit approach to valuing the condominium parcels, while also faulting the Porter appraisal for not using a cost approach for a recently constructed property. *Id*. at 7-8.

**{¶ 11}** Invoking its authority to perform an independent valuation of the property, the BTA found that condo sale prices provided "clear support for the

4

auditor's valuation of the subject property." *Id*. at 10-11. Accordingly, the BTA reinstated the auditor's valuation.

### The BTA Properly Used Condo Sale Prices In Preference to an Economic-Unit Appraisal to Value the Property

{¶ 12} In reviewing the BOR's adoption of the Porter appraisal, the BTA confronted the question whether the property value should be determined based on the condos selling individually or based on the remaining units being sold as a collective unit to a developer. The Kenney Co.'s appraisal is based on the latter theory, and the BTA properly held that the law requires the former approach. *See Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 16-18. In *Dublin City Schools*, we held that valuing all the condo units at issue as a single economic unit because of their common ownership by the developer violated R.C. 5311.11, which mandates that "[e]ach unit of a condominium property * * * is deemed to be a separate parcel for all purposes of taxation and assessment of real property."

{¶ 13} The BTA was also justified in reverting to the auditor's valuation, because the evidence of the condo sales supported the auditor's original valuation of the parcels. As for the 2010 sale, the $108-per-square-foot sale price was for unfinished units (contrary to the owner's assertion).[1] Indeed, the testimony of the owner's fact witness was that "[a]t $108 per square foot," the purchaser "purchased it unfinished, [and] finished it on their own dime." Projecting that amount over the entire square footage to be valued for 2009 generates an aggregate figure of $2,383,560—close to the auditor's valuation of $2,512,000.

---

[1] The 2010 sale does not directly indicate the value of any single parcel, because it involved more than one. According to the appraiser, Porter, the 2010 sale encompassed "Unit 7560-A and part of Unit E." It is worth noting that rejecting an appraiser's conclusion of value does not undermine the evidentiary force of factual matter contained in the appraisal report that is subject to the appraiser's certification of veracity. *See AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 16.

{¶ 14} Together with the 2010 sale, the condo sales in 2006 and 2007 (also involving, according to the owner's appraiser, the sale of "shell space") support the auditor's valuation. The 2006 sale was for $138.53 per square foot, and the 2007 sale was for $137.88 per square foot. Taking the mean of the $137.88-per-square-foot price from the 2007 sale and the $108-per-square-foot price from the 2010 sale yields $123 per square foot, which easily exceeds the $114-per-square-foot valuation reached by the auditor for 2009. And even as it validates the auditor's determination, the sale-price information undermines the appraiser's valuation of $64.80 per square foot. We therefore hold that the BTA's decision to reinstate the auditor's valuation was neither unreasonable nor unlawful.

**The *Bedford* Rule Does Not Prevent Reinstating the Auditor's Valuation**

{¶ 15} The Kenney Co. calls for applying the *Bedford* rule in this case. "Pursuant to [the *Bedford*] rule, 'when the board of revision has reduced the value of the property based on the owner's evidence, that value has been held to eclipse the auditor's original valuation,' and the board of education as the appellant before the BTA may not rely on the latter as a default valuation." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 147 Ohio St.3d 38, 2016-Ohio-3025, 59 N.E.3d 1270, ¶ 6, quoting *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 35. Under the *Bedford* rule, the BOR's adopting a new value based on the owner's evidence has the effect of shifting the burden of going forward with evidence to the board of education on appeal to the BTA. *Worthington City Schools* at ¶ 41.

{¶ 16} For two reasons, the *Bedford* rule does not support the property owner's position in this appeal. First, the presence of legal error in the BOR's adoption of the Porter appraisal justifies setting aside the reduction ordered by the BOR. *See Dublin City Schools*, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d

222, at ¶ 16-29. Second, as previously discussed, information already in the record tended to support the auditor's original valuation—and the presence of such evidence is precisely the condition imposed by the *Bedford* rule when the board of education appeals from a reduction ordered by the BOR and seeks to reinstate the original valuation. *Compare Dublin City Schools*, 147 Ohio St.3d 38, 2016-Ohio-3025, 59 N.E.3d 1270, at ¶ 10 (under the *Bedford* rule, the board of education as appellant before the BTA "must adduce affirmative evidence against the board of revision's reduced valuation and in favor of the original valuation or some other value"). That the BOE in this case seeks to rely on record evidence that was adduced before it appealed to the BTA, rather than on evidence that was first presented at the BTA, is not consequential.

### Conclusion

{¶ 17} For the foregoing reasons, we hold that the BTA acted reasonably by rejecting the owner's appraisal and reinstating the auditor's valuation.

Decision affirmed.

O'CONNOR, C.J., and LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER, J., dissents and would reinstate the decision of the Board of Revision.

O'DONNELL, J., dissents.

_____

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Karol C. Fox, for appellee Olentangy Local Schools Board of Education.

Vorys, Sater, Seymour & Pease, L.L.P., Nicholas M.J. Ray, Steven L. Smiseck, and Lauren M. Johnson, for appellant.

_____