[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *City of Columbus Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-8375.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8375

COLUMBUS CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES: METRO PARTNERS AT NW, L.L.C., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-8375.]

*Taxation—Real property valuation—Condominiums—R.C. 5311.11—Condominium units must be valued and assessed as individual units—Decision of the Board of Tax Appeals vacated.*

(No. 2013-0449—Submitted August 16, 2016—Decided December 28, 2016.)

APPEAL from the Board of Tax Appeals, No. 2010-W-3563.

————————

**Per Curiam.**

{¶ 1} This real-property-valuation case concerns the proper valuation for tax year 2009 of the 16 unsold units of a 20-unit condominium development.  At the Franklin County Board of Revision ("BOR"), the property owner presented an

appraisal that assigned a value of $2,900,000 to the units, far less than the $5,986,400 value determined by the auditor. The BOR adopted the appraisal valuation and the Columbus City Schools Board of Education ("BOE") appealed to the BTA, which reversed the decision of the BOR and reinstated the auditor's valuation. On appeal to this court, the property owner argues that the BOR properly relied on the owner's appraisal. We hold that the BTA reasonably rejected the appraiser's opinion of value, but we conclude that the BTA should have performed an independent valuation of the property. We therefore vacate the BTA's decision and remand for further proceedings.

**Factual Background**

{¶ 2} Metro Partners at NW, L.L.C. ("Metro"), contested the auditor's 2009 valuation of 16 residential condo units for an aggregate value of $5,986,400. The 16 units were part of a 20-unit condominium building. Construction began in 2006 and was completed in 2008. Parking is on the ground floor, and the units are on the floors above. The auditor had valued the 16 units as 16 separate parcels, but the BOR reduced that value to $2,900,000 ($180,000 a unit) based on the appraisal and testimony of Donald E. Miller II, MAI, that Metro offered at the BOR hearing.

{¶ 3} As of the tax-lien date, January 1, 2009, four units had been sold to individual owners. While the appraisal offered by the property owner notes that four condominiums were sold, it does not present details of those sales or use them in valuing the property. At the BTA hearing, the BOE presented conveyance-fee statements of those sales along with printouts from the auditor's website showing the square footage of the units.[1] In its decision, the BTA

---

[1] The units sold in May 2008 ($589,400 for 1,934 square feet), August 2008 ($519,850 for 1,702 square feet), April 2008 ($253,500 for 1,209 square feet), and February 2008 ($277,300 for 1,209 square feet). The price per square foot of these sales greatly exceeds that found in Miller's appraisal.

overruled the owner's objections to the admission of these documents. BTA No. 2010-W-3563, 2013 WL 784918, *5 (Feb. 20, 2013).

{¶ 4} Metro's appraiser performed an income approach and a sales-comparison approach, treating the 16 unsold units as an economic unit in the nature of an apartment complex. The appraisal characterizes the building, called the "Metropolitan," as a "fractured" or "stalled" condo development in light of the drastic adverse impact of the economic crisis on market conditions. Miller characterized the Metropolitan as "a 16-unit apartment" complex that "was a 20-unit condominium complex": "With the change in the economy 16 units remain unsold, and rented * * *." He testified at the BOR hearing that the owners were operating the property as an apartment complex.

{¶ 5} When questioned at that hearing whether he could look at the 16 remaining units as "one economic unit" given that four had been sold as condos, Miller stated that broken or stalled condominium complexes were known in the marketplace, and he claimed that his approach "is the way market participants look at the units." Miller also testified that had he valued the entire building with all 20 units as an apartment complex, and then backed out the 16 unsold units, he would have arrived at the same or similar opinion of value.

{¶ 6} Of Miller's five sale comparables, four were apartment buildings and only one was a broken condominium complex. To develop a prediction of market rent, the income approach relied on Miller's survey of the four apartment complexes and one condominium development. That approach also looked at the rental income of 16 apartments rather than income from the sale of condo units. Additionally, the "highest and best use" discussion spoke of the property's use as "market-rate multi-family," meaning that the appraiser determined the property value by viewing the remaining, unsold condominiums as apartments to let under common ownership rather than as parcels to be separately acquired and used.

**{¶ 7}** Miller testified that the subject property and other complexes "will be renting units for a period of years." The owner's representative stated, however, when asked whether the 16 units had been "converted from condos to apartments," that "they are still condos as they exist."

**{¶ 8}** As indicated, the BOR adopted the appraisal's valuation, and the BOE appealed. A short hearing was held before the BTA.

**{¶ 9}** The BTA found that Miller's appraisal was unreliable because Miller had "valued the properties collectively as an 'apartment complex' " and had "failed to consider the properties as * * * individual condominium units." BTA No. 2010-W-3563, 2013 WL 784918, *5 (Feb. 20, 2013). The BTA stated that appraising the subject properties "as one economic unit, i.e., as an apartment complex," impermissibly discounted their value. *Id.* at *6. Citing its earlier decision in *M/I Homes of Cincinnati, L.L.C. v. Warren Cty. Bd. of Revision*, BTA No. 2009-V-3796, 2010 WL 3724159 (Sept. 21, 2010), the BTA found that Miller "implicitly applied a 'bulk discount' because the properties are all owned by the same entity." *Id.* Moreover, the BTA found that the appraisal's comparables were not comparable because they were not condominium units. *Id.*

**{¶ 10}** Finally, the BTA faulted the appraisal, stating that its "failure to consider value under the cost approach" created an incomplete valuation, given that the building was completed less than 12 months before the tax-lien date. *Id.* at *7. The BTA noted, "Common ownership does not transform the condominium units, collectively, into an apartment complex particularly when the 'apartment complex' does not include all of the units in the building." *Id.* The BTA concluded that there was insufficient evidence to support the reductions and reinstated the auditor's valuation. *Id.*

**Ohio Tax Law Requires that the Condominium Units Be Valued and
Assessed as Units to Be Individually Sold**

{¶ 11} Metro's second proposition of law faults the BTA for "not finding that competent, credible and probative evidence was submitted to the BOR." The gravamen of this argument is that the appraiser's valuation did not embody the kind of "bulk discount" that was legally improper. We disagree.

{¶ 12} It is true that in a proper case, "[t]he true value for real property may well depend on its potential use as an economic unit," which "may include multiple parcels." *Park Ridge Co. v. Franklin Cty. Bd. of Revision*, 29 Ohio St.3d 12, 504 N.E.2d 1116 (1987), paragraph two of the syllabus. But the assemblage of numbered parcels that is necessary in such a case is prohibited in a case like the present.

{¶ 13} For guidance in this appeal, we look to *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 16-18. In that case, we held that valuing all the condominium units as a single economic unit because of their common ownership by the developer violated R.C. 5311.11, which states:

> Each unit of a condominium property and the undivided interest in the common elements appurtenant to it is deemed a separate parcel for all purposes of taxation and assessment of real property, and no other unit or other part of the condominium property shall be charged with the payment of these taxes and assessments.

{¶ 14} The approach taken by Miller's appraisal treats the condominium parcels as an economic unit for tax-valuation purposes, thus creating an assemblage of the recorded parcels, and that is precisely what the statute in plain

terms precludes. Although Metro argues that "[j]ust because the units are parceled as condominiums does not mean that condominium use constitutes the highest and best use of the property," Metro is wrong because the law mandates separate treatment of condominium parcels, regardless of the appraiser's findings of a market change.

{¶ 15} We also conclude that the doctrine of *Dublin City Schools* forecloses, in this context, the use of an effective discount based on the "absorption theory." That theory recognizes that a potential sale price must be discounted because of the length of the period during which the building is moving toward a stabilized occupancy, that is, when the market will absorb the units. *See Dublin Senior Community Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 455, 459-460, 687 N.E.2d 426 (1997). Quite simply, the manner in which Miller appraised the property would, if viewed as an application of the absorption theory, violate the statute because it would permit the developer discount to enter by the back door.

**The *Bedford* Rule Does Not Require Adoption of the Appraiser's Valuation**

{¶ 16} Under its second proposition of law, Metro also contends that "[w]ithout the School District submitting evidence to contradict" the BOR's adoption of the appraiser's approach, "it was unreasonable and unlawful for the [BTA] to reinstate the County Auditor's value." This argument invokes the *Bedford* rule, pursuant to which, " 'when the board of revision has reduced the value of the property based on the owner's evidence, that value has been held to eclipse the auditor's original valuation,' and the board of education as the appellant before the BTA may not rely on the latter as a default valuation." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 147 Ohio St.3d 38, 2016-Ohio-3025, 59 N.E.3d 1270, ¶ 6, quoting *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 35. Under the *Bedford* rule, the BOR's adopting a new value based

on the owner's evidence has the effect of shifting the burden of going forward with evidence to the board of education on appeal to the BTA. *Worthington City Schools* at ¶ 41.

**{¶ 17}** The rule does not require adoption of the BOR's valuation here because there is legal error in the BOR's determination. *See also Copley-Fairlawn City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2016-Ohio-1485, ____ N.E.3d ____, ¶ 31. The economic-unit analysis of the property constitutes a legal error in the Miller appraisal and thereby takes this case out of the *Bedford* doctrine.

### The Record Furnishes a Basis for an Independent Valuation

**{¶ 18}** In its third proposition of law, Metro asserts that the BOE had a burden to present evidence of value that it failed to discharge, and thus the BTA should have adopted the appraiser's valuation. We disagree because we find that the record does contain sufficient evidence to permit an independent valuation by the BTA. Indeed, the BOE shouldered its burden by showing the amount of consideration for the purchase of the four condos that sold during 2008 (all sales within a year of the tax-lien date) by introducing the conveyance-fee statements and deeds. This evidence both negates the BOR's use of the appraisal valuation and also furnishes evidence that can be used by the BTA to value the property. *See Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 25. The aggregate price per square foot for the condos that were sold was $270.90 per square foot—in comparison to the appraiser's $101.61 per square foot under his sales-comparison method.

**{¶ 19}** Because the record both negates the BOR's adoption of Miller's opinion and contains evidence that would permit the BTA to perform an independent valuation of the property, we will remand to the BTA for that purpose. On remand, the BTA shall determine the value of each unit based on the sale price and any other evidence in the record.

**CONCLUSION**

**{¶ 20}** For the foregoing reasons, we vacate the BTA's decision, and we remand with instructions that the BTA perform an independent valuation of the property.

Decision vacated

and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Karol C. Fox, for appellee Columbus City Schools Board of Education.

Sleggs, Danzinger & Gill Co., L.P.A., and Todd W. Sleggs, for appellant.

————————————