**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *South-Western City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* **Slip Opinion No. 2018-Ohio-919.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-919

SOUTH-WESTERN CITY SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.*

FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *South-Western City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* **Slip Opinion No. 2018-Ohio-919.]**

*Taxation—Real-property valuation—Board of Tax Appeals erred in remanding case to county board of revision after determining that there was no evidence in record to allow independent valuation to be performed— Decision reversed and county auditor's valuation reinstated.*

(No. 2015-1486—Submitted November 21, 2017—Decided March 13, 2018.)

APPEAL from the Board of Tax Appeals, No. 2014-3101.

_____

**Per Curiam.**

{¶ 1} In this real-property-valuation case, the owner of a shopping center sought a reduction in the county auditor's valuation of the property for tax year 2012.  The Franklin County Board of Revision ("BOR") partially reduced the value based on a sheriff's-sale appraisal.  The Board of Tax Appeals ("BTA"), however,

found this evidence unreliable and further found that the record contained no other evidence from which a value could be determined. The BTA accordingly vacated the BOR's decision, remanded the case, and directed the BOR to determine a value based on competent and probative evidence.

{¶ 2} Appellant, Board of Education of the South-Western City School District ("the BOE"), has appealed, asserting that the BTA should have reinstated the county auditor's original valuation rather than remanding the case to the BOR. We agree. We accordingly reverse the BTA's decision and reinstate the county auditor's original valuation.

## FACTS AND PROCEDURAL BACKGROUND

{¶ 3} The property at issue is a 1.492-acre parcel located on Broad Street on the west side of Columbus. The property is improved with a single-story shopping center divided into seven storefronts, comprising 19,700 square feet. For tax year 2012, the owner filed a complaint seeking to reduce the property's value from $1,300,000 to $700,000. The complaint opined that the property was overvalued and "[n]eeds [w]ork." The complaint also referred to a 2013 sheriff's sale of the property for $520,100. The BOE filed a countercomplaint, urging retention of the Franklin County auditor's original valuation.

*BOR proceedings*

{¶ 4} Deno J. Duros, a certified appraiser retained by the owner, testified at the BOR hearing. He appraised the property at $700,000 as of January 1, 2012. He inspected the property in March 2013, and at that time, there were two vacancies at the property. These vacancies still existed at the time of the hearing.

{¶ 5} To perform his appraisal, Duros relied on the sales-comparison and income approaches to value. Duros stated that for the sales-comparison approach, he could not find improved sales of leased-fee sites within the relevant geographic market. He did, however, find four sales of fee-simple sites and used those sales as a basis for his analysis. After making adjustments to the comparable sales, Duros

derived an adjusted square-footage value of $35.55. He then multiplied this value by the shopping center's square footage (19,700) to arrive at a rounded value of $700,000. On cross-examination by the BOE, Duros explained that he did not view the interiors of the comparable properties nor did he contact the parties to those sales to verify that the sales were transacted at arm's length.

**{¶ 6}** For the income approach, Duros began by calculating a gross income of $119,529. He deducted $3,586 to account for vacancy and credit-loss allowances and $41,835 to account for expenses. These deductions resulted in a net operating income of $74,108. After applying a capitalization rate of 10.57 percent against the net operating income, Duros derived a rounded value of $700,000. During questioning by the BOE, Duros explained that he used actual income (as opposed to market rent) and actual taxes (as opposed to a tax additur) to perform his calculations.

**{¶ 7}** Duros included a copy of a sheriff's-sale appraisal with his report, which the BOE questioned him about. This appraisal was certified as of June 13, 2012, and it summarily assigned a value of $780,000. The three individuals who performed the appraisal did not appear to testify. During the BOE's cross-examination, Duros explained that these three individuals would not have inspected the interior of the property. The property eventually sold at the sheriff's sale for $520,100 in 2013.

**{¶ 8}** The BOR reduced the property's value to $780,000 for tax years 2012 and 2013. In assigning this value, the BOR noted that the sheriff's-sale appraisal also had valued the property at $780,000. The BOR disregarded the sale price from the sheriff's sale because, in its view, the transaction was not made at arm's length. And it also disregarded Duros's appraisal because it did not rely on actual rents.

*BTA proceedings*

{¶ 9} The BTA heard the case on the record developed before the BOR and also considered additional argument from the BOE, which urged the BTA to disregard both Duros's appraisal and the sheriff's-sale appraisal.

{¶ 10} In its decision, the BTA criticized Duros's sales-comparison approach because he did not verify that the comparable sales were conducted at arm's length and did not view the interiors of the comparable properties. The BTA was similarly critical of Duros's income approach, stating that his "report contains no market information relating to income, expenses, and vacancy and credit loss, nor does it provide an analysis of the derivation of the capitalization rate." BTA No. 2014-3101, 2015 WL 4887074, *2 (Aug. 11, 2015). Citing its own precedent, the BTA determined that it was "clearly improper" for the BOR to rely on the sheriff's-sale appraisal. *Id.* at *3. The BTA noted that the sheriff's-sale appraisal contained no supporting documentation or analysis, that the appraisers did not appear to testify before the BOR or the BTA, and that the valuation date of June 13, 2012, was about six months after the 2012 tax-lien date.

{¶ 11} After reviewing the record, the BTA determined that the BOR "properly concluded that the property owner sufficiently demonstrated that the initial assessment of the subject property overstated its value." *Id.* at *4. The BTA nevertheless ruled that the evidence the BOR relied on was neither competent nor probative and that there was no other evidence in the record from which the BTA could independently determine value. Accordingly, the BTA vacated the BOR's determination of value and remanded the case for the BOR to make a finding of value based on competent and probative evidence. The BOE appealed.

**STANDARD OF REVIEW**

{¶ 12} When the BTA "reviews appraisals, [it] is vested with wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd.*

*of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9. Because the BOE does not challenge the BTA's evidentiary determinations in this appeal, we need not evaluate whether the BTA abused its discretion in weighing the evidence. But we still must decide a question of law raised by the BOE, which we consider de novo, *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, 73 N.E.3d 486, ¶ 13. If the BTA acted reasonably and lawfully, we will affirm. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14.

## DISCUSSION

{¶ 13} The BOE's lone proposition of law asserts that the BTA erred by remanding the case to the BOR after determining that there was no evidence in the record to perform an independent valuation. According to the BOE, the BTA should have instead reinstated the county auditor's original valuation.

### *The* Bedford *rule does not control*

{¶ 14} The BTA's decision not to reinstate the county auditor's original valuation was apparently informed by the rule articulated in *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913. Although the BTA did not expressly rely on *Bedford*, it quoted from decisions that draw directly from its principles—namely, *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 35-41, and *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, 11 N.E.3d 206, ¶ 17-21.

{¶ 15} The *Bedford* rule provides that " 'when the board of revision has reduced the value of the property based on the owner's evidence, that value has been held to eclipse the auditor's original valuation,' and the board of education as the appellant before the BTA may not rely on the latter as a default valuation." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 147 Ohio St.3d 38, 2016-Ohio-3025, 59 N.E.3d 1270, ¶ 6, quoting *Worthington* at ¶ 35. Thus, when the owner furnishes evidence relied on by a board of revision that is

"competent and at least minimally plausible," a board of education cannot simply fault the owner's evidence and urge reinstatement of the auditor's valuation; instead, the board of education bears the burden to prove its proposed value. *Id.* at ¶ 7.

{¶ 16} But a board of education need not prove a new value when a board of revision's determination of value is infected with legal error. For example, in *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 148 Ohio St.3d 700, 2016-Ohio-8375, 72 N.E.3d 637, we concluded that *Bedford* did not apply when a board of revision had unlawfully valued the property according to an economic-unit analysis. *Id.* at ¶ 17, citing *Copley-Fairlawn City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 147 Ohio St.3d 503, 2016-Ohio-1485, 68 N.E.3d 723, ¶ 31.

{¶ 17} The BOE asserts here that it was not required to prove a new value because the BOR committed legal error in assigning controlling significance to the sheriff's-sale appraisal. In support, the BOE cites *Olmsted Falls Village Assn. v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 552, 664 N.E.2d 922 (1996), in which we held that "the BTA must base its decision on an opinion of true value that expresses a value for the property as of the tax lien date of the year in question," *id.* at 555. Indeed, "the first day of January of the tax year in question is the crucial valuation date for tax assessment purposes." *Freshwater v. Belmont Cty. Bd. of Revision*, 80 Ohio St.3d 26, 29-30, 684 N.E.2d 304 (1997).

{¶ 18} In this case, the BOR valued the property for tax years 2012 and 2013 based on a sheriff's-sale appraisal that opined a value as of June 13, 2012. In valuing the property in direct reliance on an opinion of value that did not correspond to the tax-lien date, the BOR committed legal error in contravention of *Olmsted Falls*.[1] To be sure, even when an appraisal opines a value that does not coincide

---

[1] As additional grounds for its assertion that the BOR erred by relying on the sheriff's-sale appraisal, the BOE argues that the appraisal constitutes hearsay and that it was performed in connection with

with the tax-lien date, factual information contained in that appraisal may still be regarded as furnishing potentially relevant evidence of a property's value as of the tax-lien date. *See AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 16-17; *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 26-29. But here, the sheriff's-sale appraisal credited by the BOR contains no factual information that could furnish a basis for valuing the subject property as of the tax-lien date—it simply opines a value without any supporting facts or analysis. Nor was testimony offered to show how the appraisal's opinion of value could be applied to the tax-lien date.

{¶ 19} Given the legal error in the BOR's determination, this case is not controlled by the *Bedford* rule.

*The county auditor's original valuation should be reinstated*

{¶ 20} As noted above, the BTA disregarded both Duros's appraisal and the sheriff's-sale appraisal and further concluded that there was no other evidence in the record from which an independent valuation could be performed. The BTA therefore vacated the BOR's decision and remanded the case to the BOR to conduct "further proceedings, as necessary, to determine the subject's reduced valuation, as of January 1, 2012 and January 1, 2013, based upon competent, probative evidence." 2015 WL 4887074 at *4. In the BOE's view, the BTA should have simply reinstated the county auditor's original valuation after concluding that the record lacked probative evidence from which a value could be determined.

{¶ 21} We have explained that "[e]ven if some evidence tends to negate the auditor's original valuation, it is proper to revert to that valuation when the BTA finds that the owner has not proved a lower value *and there is otherwise 'no evidence from which the BTA can independently determine value.' "* (Emphasis

a forced sale as contemplated by R.C. 5713.04. Given the error arising from the BOR's violation of *Olmsted Falls*, we need not address these other grounds for the BOE's assertion of error.

added in *Vandalia-Butler*.)    *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 24, quoting *Simmons v. Cuyahoga Cty. Bd. of Revision*, 81 Ohio St.3d 47, 49, 689 N.E.2d 22 (1998); *see also Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 31.

{¶ 22} It follows that the BTA erred in remanding the case to the BOR. Here, the BTA found that the owner demonstrated that the property had been overvalued, that the owner's evidence of value did not establish the owner's proposed value, and that there was not enough evidence to independently value the property.  After making these findings, the BTA should have reinstated the county auditor's original valuation rather than remanding the case to the BOR.  *See Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, ¶ 35 (reinstating county auditor's original valuation when "the record did not contain sufficient evidence for the BTA to perform an independent valuation of the property").  This disposition accords with the BTA's statutory duty to "determine the taxable value of the property" as directed by R.C. 5717.03(B).  Although R.C. 5717.03(F) empowers the BTA to order a remand, as the case law discussed above instructs, the BTA's exercise of that power under the circumstances was unwarranted.

## CONCLUSION

{¶ 23} For the foregoing reasons, we reverse the BTA's decision and reinstate the county auditor's original valuation.

Decision reversed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

DEGENARO, J., not participating.

_____

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Richelle L. Thoburn, for appellant.

_____