[Cite as *KW BV, L.L.C. v. Euclid*, 2019-Ohio-3180.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

KW BV, L.L.C., ET AL.,                           :

    Plaintiffs-Appellants,            :

                                   No. 107489

v.                                               :

CITY OF EUCLID, OHIO,                            :

    Defendant-Appellee.              :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**   August 8, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-877179

---

***Appearances:***

Dinn, Hochman & Potter, L.L.C., Benjamin D. Carnahan,
and Steven B. Potter, *for appellants*.

Kelley A. Sweeney, Director of Law, Laura Rubadue,
Assistant Director of Law, City of Euclid, *for appellee*.

ANITA LASTER MAYS, J.:

{¶ 1}   Plaintiffs-appellants, KW BV, L.L.C., et al. (ΑKW@), appeal the trial

court's decision denying KW's motion for summary judgment and granting a

decision in favor of defendant-appellant, city of Euclid (AEuclid@).   We affirm the trial court's decision.

## I.    Facts and Procedural History

{¶ 2}   Euclid assesses an annual fee for rental registration.   Single, two-, and three-family homes are charged an annual fee of $200, and multi-family units or apartments are charged an annual fee of $35 per unit.   KW are owners of condominium units in Blisswood, Village, located in Euclid, and are charged an annual fee of $200 per condominium unit, because Euclid considers condominiums single-family homes.   KW disagrees and contends that they should be considered a multi-family dwelling entitled to the $35 per unit rate.

{¶ 3}   In response to the assessment, KW filed a complaint against Euclid and sought declaratory judgment that their condominium units were not single, two-, or three-family homes as defined in the Euclid city ordinances.   KW filed a motion for summary judgment.   Euclid opposed KW's motion for summary judgment.   The trial court denied KW's motion and issued a decision granting judgment for Euclid.   Euclid did not file a cross-motion for summary judgment. Euclid asserts that the trial court did not have jurisdiction to entertain KW=s complaint because, first, they failed to join all necessary parties, because KW represents only 45 of the 268 property owners in Blisswood; and second, KW made claims of unconstitutionality of a city ordinance but failed to plead that in the complaint and failed to serve the attorney general with a copy of the constitutionality challenge.

## II. Assignments of Error

{¶ 4} KW assigns two errors for our review:

I. The trial court erred in finding that the subject condominium units were single-family homes under Euclid Codified Ordinance 1761.05; and

II. Because Civ.R. 56 did not authorize the trial court to enter judgment in favor of appellee, a nonmoving party, the trial court erred as a matter of law in granting summary judgment.

## III. Standard of Review

{¶ 5} We review a trial court's entry of summary judgment de novo, using the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment may only be granted when the following is established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and the conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in its favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978); Civ.R. 56(E).

{¶ 6} The party moving for summary judgment bears the initial burden of apprising the trial court of the basis of its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact on an essential element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). "Once the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine

issue of material fact exists." *Willow Grove, Ltd. v. Olmsted Twp.*, 2015-Ohio-2702, 38 N.E.3d 1133, & 14-15 (8th Dist.), citing *Dresher.* "To satisfy this burden, the nonmoving party must submit evidentiary materials showing a genuine dispute over material facts." *Willow Grove* at & 15, citing *PNC Bank v. Bhandari*, 6th Dist. Lucas No. L-12-1335, 2013-Ohio-2477.

## IV. Discussion

### A. First Assignment Of Error Part I — the Trial Court Erred in Dismissing Appellants' Complaint Because Appellants' Condominium Units are Dwelling Units Within a Building, not Single-Family Homes; this Genuine Issue of Material Fact Precludes Dismissal of Appellants' Complaint

{¶ 7} Euclid Codified Ordinances 1761.05(1) and (2) states in part, "The applicant is entitled to one initial inspection and two follow-up compliance inspections. The fees are as follows: Building with four or more units. A non-refundable fee of [$35] per unit. Single, two-, and three-family homes. A non-refundable fee of [$200]." Euclid claims that they interpret condominiums as single, two-, and three-family homes and apartment complexes as buildings with four or more units based on various definitions contained in the Euclid Codified Ordinances. KW argues that because their condominiums are located within a building with four or more units, the condominiums should be subjected to the $35 per unit rate rather than the $200 per unit rate. KW is not challenging the constitutionality of the ordinance.

{¶ 8} KW argues that their condominium units should be treated as apartment units instead of single, two- and three-family homes. We find that KW is incorrect in their assertion. The condominium units, unlike apartments, are considered single dwelling units because they can be owned and sold individually. Apartments in an apartment complex cannot. "Under the plain language of R.C. 5311.11, each condominium unit is 'deemed to be a separate parcel for all purposes of taxation and assessment of real property.'" *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 17, citing *Eastcreek Corp. v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga Nos. 53150-53156, 1988 Ohio App. LEXIS 18 (Jan. 7, 1988). Also, "[c]ommon ownership does not transform the condominium units, collectively, into an apartment complex particularly when the 'apartment complex' does not include all of the units in the building." *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 148 Ohio St.3d 700, 2016-Ohio-8375, 72 N.E.3d 637, ¶ 10.

{¶ 9} As defined by R.C. 5311.01(K),

"[c]ondominium" means a form of real property ownership in which a declaration has been filed submitting the property to the condominium form of ownership pursuant to this chapter and under which each owner has an individual ownership interest in a unit with the right to exclusive possession of that unit and an undivided ownership interest with the other unit owners in the common elements of the condominium property.

{¶ 10} In the case of Blisswood Village, KW owns 45 of the 268 condominium units and has an individual ownership interest in each unit, in accordance to R.C. 5311.01(K). Each unit is deemed to be a separate parcel for all

purposes of taxation and assessment of real property and, therefore, should not be considered apartments. Additionally, Euclid Codified Ordinances 1358.02(a) provides the definition of attached single-family dwelling stating,

> "Attached single-family dwelling" means individually owned single-family dwelling units, i.e. condominiums, not exceeding eight, which are attached to one another by common walls and which have individual heating and plumbing. Each dwelling shall have a permanent parcel number filed with the County Recorder as a condominium development.

{¶ 11} Euclid Codified Ordinances 1751.04(k) provides the definition of a multiple dwelling stating,

> "Multiple dwelling" means a building containing four or more dwelling units or one or more dwelling units if the building contains a use other than a dwelling use. For the purpose of applying this definition, any building which is being operated as a rooming house pursuant to a valid City license shall be classified as a multiple dwelling. The words "multiple dwelling" and "apartment house" are synonymous.

{¶ 12} According to the ordinance, condominiums are considered single-family dwellings and apartments are considered multiple dwellings. The language in the ordinance is not ambiguous. It is clear that Euclid considers condominiums single-family dwellings and not apartments. The trial court did not err in finding that the condominium units were single-family homes.

**B. First Assignment of Error Part II — Even if this Court were to Allow an Interpretation and Analysis of the Words within the Euclid City Ordinances, the Rules of Statutory Construction Mandate the Presentation of Evidence of Legislative Intent; the Opinions of Current Agency Employees are not Relevant**

{¶ 13} KW argues that the trial court erred by considering two affidavits from city employees concerning the ordinances because neither employee works for Euclid city council or attempted to provide any testimony regarding legislative intent when the ordinance was enacted. However, KW does not demonstrate that the trial court considered the affidavits in its summary judgment decision. KW also argues that Euclid altered the plain meaning of the words it used in its ordinance.

> To interpret a statute, we must first look at its language to determine legislative intent. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). When a statute's meaning is clear and unambiguous, we apply the statute as written. *Id.* at 105-106. We must give effect to the words used, refraining from inserting or deleting words. *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53-54, 524 N.E.2d 441 (1988). If a legislative definition is available, we construe the words of the statute accordingly. R.C. 1.42.

*State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, & 4.

{¶ 14} Euclid Codified Ordinances 1761.05 is clear and unambiguous. It provides one fee for single-family dwellings and another for multi-family dwellings. It is clear that condominiums are considered single-family dwellings under the statute. The trial court applied the statute as written. Therefore, the trial court did not err in finding that the condominiums units were single-family dwellings under the Euclid Codified Ordinances.

**C.** **Second Assignment of Error — the Trial Court Erred in Failing to Follow Long-Standing Ohio Supreme Court Precedent that when only the Plaintiff Files for Summary Judgment, the Trial Court May only Grant or Deny the Motion, and May not Dismiss the Case if there were Any Issues of Fact to be Litigated**

{¶ 15} KW contends Civ.R. 56 does not authorize the trial court to rule in favor of the nonmoving party by dismissing the case where there are issues of fact to be litigated.

> However, "while Civ.R. 56 does not ordinarily authorize courts to enter summary judgment in favor of a nonmoving party, *Marshall v. Aaron*, 15 Ohio St.3d 48, 472 N.E.2d 335 (1984), syllabus, an entry of summary judgment against the moving party does not prejudice [their] due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the nonmoving party is entitled to judgment as a matter of law. *Houk v. Ross*, 34 Ohio St.2d 77, 296 N.E.2d 266 (1973), paragraph one of the syllabus." *State ex rel. Cuyahoga County Hospital v. Ohio Bureau of Workers' Comp.*, 27 Ohio St. 3d 25, 28, 500 N.E.2d 1370 (1986). The Ohio Supreme Court has applied this same principle to affirm the entry of summary judgment in favor of defendants who did not move for it, where other defendants did move for summary judgment and the same reasoning was applicable to all. *State ex rel. Newell v. Cuyahoga County Court of Common Pleas*, 77 Ohio St.3d 269, 673 N.E.2d 1299 (1997), fn. 1.

*Samman v. Nukta*, 8th Dist. Cuyahoga No. 85739, 2005-Ohio-5444, & 20, fn. 3.

{¶ 16} Euclid was entitled to judgment as a matter of law, as the nonmoving party, where the trial court found that there was no genuine issue of material fact, and summary judgment did not prejudice KW's due process rights where all relevant evidence was before the court. *Huntington Natl. Bank v. Anderson*, 9th Dist. Lorain No. 17CA011223, 2018-Ohio-3936, & 14. The ordinance is clear and unambiguous. It provides one fee for single-family dwellings and another for

multi-family dwellings. It is clear that condominiums are considered single-family dwellings under the statute. The record reveals no genuine issue as to any material fact exist. Therefore, the trial court did not err as a matter of law in granting judgment in favor of Euclid.

## V.    Euclid's Arguments

{¶ 17} Euclid argues that the trial court lacked jurisdiction to hear KW's complaint for declaratory judgment because the complaint did not join all necessary parties and was not properly pled and served upon the Ohio Attorney General when the constitutionality of the city code was questioned. Euclid, however, did not file a cross appeal and asserts that App.R. 3(C)(2) applies.

{¶ 18} App.R. 3(C)(2) states, "A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal or to raise a cross-assignment of error." "[P]ursuant to App.R. 3(C)(2) a cross appeal is not necessary when the arguments raised do not seek to change the judgment but merely raise alternative grounds in support of the judgment that were either ignored or overlooked by the trial court. *Kaplysh v. Takieddine*, 35 Ohio St.3d 170, 175, 519 N.E.2d 382 (1988)." *Murray v. State*, 8th Dist. Cuyahoga No. 78374, 2002-Ohio-664, & 21, fn. 2.

{¶ 19} As previously stated, KW owns 45 of the 268 condominiums in Blisswood Village. The other 223 property owners did not join KW in their complaint, although the codified code affects them identically. If KW's units are

treated as apartment units, subjected to the $35 per unit fee, then the owners of the other units would be subjected to the same fee because their units are in the same building.

{¶ 20} Euclid contends that the trial court lacked jurisdiction to hear KW's complaint because R.C. 2721.12(A) states in part, "when declaratory relief is sought under this chapter in an action or proceeding, all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding." The other 223 property owners were not made parties to the action or proceeding.

> The absence of a necessary party is a jurisdictional defect that precludes any declaratory judgment. *Bretton Ridge Homeowners Club v. Deangelis*, 51 Ohio App.3d 183, 185, 555 N.E.2d 663 (1988), citing, *Cincinnati v. Whitman*, 44 Ohio St.2d 58, 59, 337 N.E.2d 773 (1975). Thus, failure to join necessary parties renders any declaration by the court void. *Id. See also, Walter v. Romerock Assn.*, 11th Dist. Ashtabula No. 94-A-0019, 1995 Ohio App. LEXIS 885 (Mar. 10, 1995) (upholding trial court's dismissal of complaint for failure to join necessary parties in declaratory action).

*Cerio v. Hilroc Condominium Unitowners Assn.*, 8th Dist. Cuyahoga No. 83309, 2004-Ohio-1254, ¶ 10.

{¶ 21} In addition, "R.C. 2721.12 governs jurisdiction, which any party may challenge. Further, because all necessary parties were not named, the trial court was without jurisdiction to award declaratory judgment, and such judgment is void. *See, Bretton Ridge*, supra. We cannot say that a void judgment is harmless." *Id.* at ¶ 13. "We hold that the declaratory judgment is void, and the complaint should be dismissed unless all necessary parties are joined." *Id.* at ¶ 14.

{¶ 22} Euclid is incorrect that App.R. 3(C)(2) applies to them. App.R. 3(C)(2) applies only if Euclid does not seek to change the judgment. However, that is not the case here. Euclid argues that the trial court did not have jurisdiction to hear the case because all of the affected parties were not joined. If that is the case, the result would be a void judgment and therefore, the complaint would be dismissed unless all necessary parties are joined. That decision changes the trial court's judgment by rendering it void, which is a substantial change. "A void judgment puts the parties in the same position they would be in if it had not occurred." (Citations omitted.) *Video Shack, Inc. v. Smith*, 7th Dist. Columbiana No. 2001-CO-41, 2003-Ohio-5149, & 12. "Under App.R. 3(C)(1), a notice of cross-appeal must be filed when the cross-appealing party seeks to change the judgment." *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. Franklin No. 09AP-756, 2010-Ohio-1226, & 31. Euclid is not merely raising alternative grounds in support of the judgment, it is seeking to have the judgment changed. Therefore, Euclid was required to file a cross appeal.

{¶ 23} Secondly, Euclid contends that the trial court lacked jurisdiction to hear KW=s complaint for declaratory judgment because the complaint was not properly pled and served upon the Ohio Attorney General when the constitutionality of the city code was questioned. R.C. 2721.12 states in part,

> In any action or proceeding that involves the validity of a municipal ordinance or franchise, the municipal corporation shall be made a party and shall be heard, and, if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general also

shall be served with a copy of the complaint in the action or proceeding and shall be heard.

{¶ 24} We find that Euclid's argument is misplaced because KW did not claim that the city code was unconstitutional. Instead, KW argued that there was a genuine issue of fact regarding whether their units should be regarded as single-family units or multi-family units. Therefore, KW was not required to serve a copy of the complaint to the Ohio Attorney General.

## VI. Conclusion

{¶ 25} We affirm the trial court's decision denying KW's motion for summary judgment and granting a decision in favor of Euclid.

{¶ 26} Judgment is affirmed.

It is ordered that the appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION;
SEAN C. GALLAGHER, P.J., DISSENTS WITH SEPARATE OPINION


MICHELLE J. SHEEHAN, J., CONCURRING IN JUDGMENT ONLY:

{¶ 27} I concur in judgment only. I respectfully disagree that Euclid Codified Ordinances ("E.C.O.") 1761.05 is unambiguous. When E.C.O. 1761.05 is read in its entirety, including both subsections (a)(1) and (a)(2), condominiums could qualify as "single, two and three family homes" subject to the $200 per property fee and "buildings with four or more units" subject to the $35 per unit fee. However, buildings with three or fewer condominiums would only qualify as "single, two and three family homes." *Univ. Circle Inc. v. Cleveland*, 56 Ohio St.2d 180, 184, 383 N.E.2d 139 (1978) (an ordinance should not be construed in isolation but in context of the entire ordinance). Thus, a plain reading of the ordinance reveals the ordinance is susceptible to more than one interpretation as to whether condominiums are required to pay a $200 or $35 rental license fee.

{¶ 28} Application of an ordinance or statute to the facts is a question of law that we review de novo. *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 25. Construction of ordinances adhere to the same rules of statutory construction. *See Bosher v. Euclid Income Tax Bd. of Rev.*, 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181, ¶ 14. When the language of an ordinance is unambiguous, the court is to apply the clear meaning of the words used. *Id.* However, if an ordinance is ambiguous, i.e., if the language of the ordinance is susceptible to more than one reasonable interpretation, we must apply rules of construction to interpret the ordinance. *See Georgetown of the Highlands v. Cleveland Div. of Water*, 2016-Ohio-8039, 75 N.E.3d 794, ¶ 21 (8th

Dist.), citing *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513, 1996-Ohio-376, 668 N.E.2d 498.

{¶ 29} Appellant argues in the alternative that "even if this Court were to allow an interpretation and analysis of the words within the Euclid City Ordinances, the rules of statutory construction mandate the presentation of evidence of legislative intent; the opinions of current agency employees is not relevant."

{¶ 30} Appellants are correct that when interpreting a statute, courts consider legislative intent. R.C. 1.49 provides that if a statute is ambiguous or susceptible to more than one interpretation, courts may consider several factors in determining the legislative intent, including "the circumstances surrounding the legislative enactment, the history of the statute, the spirit of the statute (the ultimate results intended by adherence to the statutory scheme), and the public policy that induced the statute's enactment." *State ex rel. Toledo Edison Co.* at 514.

{¶ 31} In this case, the ordinance fails to define relevant terms such as what constitutes a "home" or "unit." The appellate record also provides little information regarding the legislative intent of the ordinance. While I would find that E.C.O. 1761.05 is ambiguous, considering the spirit of the ordinance, the ultimate results intended, and various definitions considered elsewhere in the Euclid Codified Ordinances defining similar structures as discussed in the opinion (such as E.C.O. 1358.02 defining "single family dwellings" as an "individually owned" unit, "i.e. condominiums * * * which are attached to one another by common

walls") I agree that Euclid considers condominiums "family homes" independently owned and subject to the $200 rental inspection fee.

{¶ 32} I therefore concur in judgment only.

SEAN C. GALLAGHER, P.J., DISSENTING:

{¶ 33} I respectfully dissent.   The city of Euclid ("City") sees a dichotomy: a building is either an "apartment or multi-family" or "single (two or three) family property."   There is nothing in between.   The ordinance at issue, Euclid Codified Ordinances ("E.C.O.") 1761.05 sets out two options as well.   That section provides that "single, two and three family homes" owe a nonrefundable fee of $200 for a rental license.   "Buildings with four or more units" owe $35 per unit for that same license.   Neither party nor the trial court has provided a definition of "single, two and three family homes."   KW claims that an unambiguous reading of section 1761.05 leads to one conclusion — a condominium building, or any building for that matter, with four or more units should be charged $35 per unit for each rental license instead of the $200 fee associated with a one-, two-, or three-family home. The separate concurring opinion would find the statute susceptible to more than one interpretation because of the fact that the regulatory scheme provides that condominiums are subject to two fee structures depending on whether there are four or more, or three or fewer units within one building structure.   This setup does not create ambiguity.   The question posed by the regulatory scheme is straightforward — are there four or more condominium units within the same

building structure? If there are not, the $200 fee applies instead of the $35 per-unit fee. This is not an ambiguity, it is a bright-line rule. Further, neither party, nor the trial court for that matter, has asserted that the statute is ambiguous. App.R. 16(A)(7). Both sides contend that an unambiguous reading of the statute compels a decision in their favor.

{¶ 34} The City's argument is more complex. The City presented an affidavit from the Building and Housing Manager who professed that the City treats every unit in a "condominium complex" as a "single family property" for the purposes of the rental licensing. Those terms have also not been defined, and are not included in the relevant statutory section. Nevertheless, in support of its argument, the City cites E.C.O. sections 1358.02 and 1751.04. The former defines "attached single-family dwelling" as "individually owned single-family dwelling units, i.e., condominiums, not exceeding eight, which are attached to one another by common walls and which have individual heating and plumbing." The latter section defines "multiple dwelling" as a "building" that contains "four or more dwelling units or one or more dwelling units if the building contains a use other than a dwelling use." The definition of "attached single-family dwelling" does not appear relevant to determining the legal definition of "single, two and three family homes." Neither party, nor the trial court, has explained whether there is any parity between a "home" and a "single-family dwelling" or a "single family property."

{¶ 35} Instead, the City claims that because condominium units are separately owned and taxed, under E.C.O. 1761.05(a)(2), the City may charge $200

for each unit regardless of how many units are within a single building structure. Although not part of the current discussion, it should be noted that under E.C.O. 1761.05(a), the drafters expressly provided that the $35 fee was "per unit." That "per unit" language was omitted from the $200 registration fee that applies to single-, two-, and three-family homes. Nevertheless, the City does not cite any authority to support this proposition. App.R. 16(A)(7). Under the City's rationale, any single family "home" individually owned and taxed, owes $200 for a rental license. Thus, the City essentially adds in the modifier "individually owned and taxed" to "single family home" to explain its interpretation of the statute. Such a modifier may be necessary in light of the breadth of the undefined word "home," which can encompass an apartment or condominium unit in the general sense of the word. Without the modifier, the City would have unbridled discretion to charge anyone intending to rent or lease any "home" $200 regardless of how many units are in the building. Such an interpretation would impermissibly nullify E.C.O. 1761.05(a)(1). *State v. Polus*, 145 Ohio St.3d 266, 2016-Ohio-655, 48 N.E.3d 553, ¶ 12 (courts should avoid construction of a statute that renders a provision meaningless or inoperative).

{¶ 36} According to the unambiguous language of E.C.O. 1761.05(a)(1), any building with "four or more units" is to be charged a nonrefundable fee of $35 per unit to obtain the rental license. Neither party has disputed that the word "unit" is referring to a "dwelling unit" as defined under E.C.O. 1751.04(g). Under the applicable definitional section, a "dwelling" is defined as "a building" intended or

designed to be occupied by not more than three families living separately and independent of each other."  E.C.O. 1751.04(e).  KW's units are not "dwellings" for the purposes the "Building and Property Maintenance Code of the City of Euclid" under which the licensing ordinance at issue falls, much less can they be considered a "single family dwelling."  Each of KW's units is a "multiple dwelling" as defined by division (k) of that section.

{¶ 37} The definition of "attached single-family dwelling" as defined elsewhere in the E.C.O. is not dispositive, although if anything, it demonstrates that the drafters are aware of how to properly reference condominium units when necessary.  The phrase was not included in E.C.O. 1761.05.  When statutes are unambiguous, we need not interpret the language.  *Polus* at ¶ 7.  Under a plain reading of E.C.O. 1761.05, any building with four or more units owes a fee of $35 per unit.  Thus E.C.O. 1761.05(a) presents a dichotomy, but not the one interpreted by the City.

{¶ 38} And although the phrase "single, two or three family homes" is undefined, it is undisputed that the issue in this case is the fee to be assessed against a "multiple dwelling," in other words, a building with four or more units.  As a result, we need not determine the scope of what constitutes the "single, two or three family homes."  The units at issue fall under the more-specific, but unambiguous statutory language.  *Polus* at ¶ 10.  Further, we cannot read any modifiers into E.C.O. 1751.04(a) in order to shift a condominium unit, now defined as a multiple dwelling, into the "single, two or three family homes" category.  Nor can the phrase

"single, two or three family homes" be interpreted as a reference to those single-family homes that are "individually owned and taxed."

{¶ 39} For the foregoing reasons, I dissent.